| | |
|---|---|
| **DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO**<br><br>1437 Bannock Street, Room 256<br>Denver, CO 80202<br>Telephone: (720) 865-8301<br><br>**Plaintiff:**    **BLUE SKY CONDOMINIUMS HOMEOWNERS' ASSOCIATION, INC.**<br><br>v.<br><br>**Defendant:**    **LEXINGTON INSURANCE COMPANY**<br><br>Attorneys for Plaintiff:<br>Bradley A. Levin, Esq., Reg. 13095<br>Jeremy A. Sitcoff, Esq., Reg. 29393<br>Roberts Levin Rosenberg PC<br>1660 Wynkoop Street, Suite 800<br>Denver, CO  80202<br>(303) 575-9390<br>Fax:  (303) 575-9385<br>bal@robertslevin.com<br>jas@robertslevin.com | DATE FILED: June 12, 2013 11:16 AM<br>FILING ID: 1E62E91C5D3F2<br><br>▲ **COURT USE ONLY** ▲<br>_____<br><br>**Case Number:**<br><br>**Courtroom:** |
| **COMPLAINT AND JURY DEMAND** ||

Plaintiff, Blue Sky Condominiums Homeowners' Association, Inc., by and through its attorneys, ROBERTS LEVIN ROSENBERG PC, for its Complaint and Jury Demand against Defendant, Lexington Insurance Company, states and alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Blue Sky Condominium Homeowners' Association, Inc. ("Blue Sky Association"), is a Colorado Nonprofit Corporation located in Erie, Colorado.

2. Defendant, Lexington Insurance Company ("Lexington") is, upon information and belief, a corporation organized under the laws of the State of Delaware, with its principal place of business in Boston, Massachusetts.  At all times pertinent hereto, Lexington was authorized to do and was doing business in the State of Colorado.

3. This Court has jurisdiction over the subject matter of this action.

4. Pursuant to C.R.C.P. 98(c), venue is proper in this county, which Blue Sky Association designates as the place of trial of this action.

## GENERAL ALLEGATIONS

5. On or about October 15, 2004, VRC Development, LLC ("VRC") and CFC Residential Constructors, Inc. ("CFC") entered into a contract pursuant to which CFC agreed to serve as the general contractor of a 408-unit condominium development in Erie, Colorado commonly referred to as Vista Ridge/Blue Sky Condominiums (the "Blue Sky Project").

6. In approximately November 2007, control of Blue Sky Association transitioned from the Declarant, VRC, to a homeowner elected Board of Directors.

7. Some time after Blue Sky Association assumed control and after the Blue Sky Project had been put to its intended use, property damage from certain construction defects became apparent at particular locations in the community. These defects included, but were not limited to, inadequate site grading and drainage, inadequate foundation systems, improperly installed building envelope elements, improperly installed flatwork and pavement, improperly installed fire suppression and mechanical systems, and improperly installed roofing systems.

8. At the time VRC developed the Blue Sky Project and CFC served as the general contractor of the Blue Sky Project, VRC and CFC were both insured under a Commercial General Liability Policy, Policy No. 0337680, effective from April 28, 2004 to April 28, 2007 (the "Policy").

9. After learning from Blue Sky Association about potential construction defects at the Blue Sky Project, VRC and CFC tendered initial notice of the claim to Lexington under the Policy.

10. By letter dated October 1, 2008, AIG Domestic Claims, Inc. ("AIGDC"), Lexington's authorized representative, acknowledged receipt of the claim.

11. By letter dated December 24, 2008, AIGDC, on Lexington's behalf, supplemented its October 1, 2008 correspondence and advised VRC and CFC, *inter alia,* that Lexington was reserving its rights to deny coverage for the claim under the Policy.

12. As acknowledged in the December 24, 2008 correspondence from AIGDC, Lexington was aware that VRC and CFC were each incurring substantial expenses and attorneys fees in connection with the construction defect claims asserted by Blue Sky Association.

13. By letter dated February 3, 2009, AIGDC, on Lexington's behalf, acknowledged receipt of a Notice of Claim pursuant to C.R.S. § 13-20-803.5, asserting the existence of construction defects at the Blue Sky Project. In that same correspondence, Lexington advised, *inter alia,* that it had retained separate counsel to represent VRC and CFC with respect to claims asserted by Blue Sky Association.

14. Blue Sky Association, CFC, and VRC attempted but were unable to resolve their dispute during the Notice of Claim process.

15. As a result, Blue Sky Association filed a complaint on March 16, 2009, against VRC and CFC. Blue Sky Association's lawsuit was then joined with an action VRC and CFC had previously filed against various subcontractors, which then became styled *Blue Sky Condominiums Homeowners' Association v. VRC Development, LLC et al.*, Case No. 2008-cv-817 ("Underlying Lawsuit").

16. In the Underlying Lawsuit, Blue Sky Association claimed that covered property damage occurred and exists at the Blue Sky Project and that they sustained covered property damages arising from defective construction of the residences and common areas.

17. Blue Sky Association claimed millions of dollars of covered damages at the Blue Sky Project as a result of the construction defects and asserted that VRC and CFC were responsible for the damages.

18. The defects and property damage alleged by Blue Sky Association in the Underlying Lawsuit occurred during the period of coverage for the Policy.

19. The allegations made against CFC and VRC in the Underlying Lawsuit fall within the coverage grant of the Policy, and are subject to no Policy exclusions or limitations.

20. Following a mediation in December 2011, Blue Sky Association made a demand in the amount of $13,975,000 to settle all of its claims against VRC and CFC.

21. Blue Sky Association explained that VRC and CFC's exposure in the Underlying Lawsuit exceeded $56,000,000.

22. Blue Sky Association's demand was based, in part, on an understanding that there was only one occurrence under the Policy and that the $3,000,000 limit for each of the three policy years had been triggered.

23. On October 30, 2012, Lexington, through its attorneys, supplemented its coverage position with respect to the Underlying Lawsuit.

24. Lexington's attorneys advised, *inter alia,* that Lexington was now taking the position that there were 11,799 separate occurrences at the Blue Sky Project, that each occurrence had a $250,000 self-insured retention ("SIR"), and that Lexington had no duty to defend and indemnify its insureds in the Underlying Lawsuit if the SIR payments exceeded any damage award to Blue Sky Association. Lexington's attorneys further advised that a purported subsidence exclusion in the Policy precluded coverage for much of the Underlying Lawsuit.

25. On January 15, 2013, the parties in the Underlying Lawsuit participated in a second mediation.

26. Following the mediation, Blue Sky Association made a demand in the amount of $9,000,000 to settle all of its claims against CFC and VRC in the Underlying Lawsuit.

27. Counsel for CFC transmitted the $9,000,000 settlement demand to Lexington in a timely manner. Lexington was advised that CFC and VRC's exposure in the Underlying Lawsuit greatly exceeded the $9,000,000 demand, even taking into consideration Lexington's position concerning applicability of the purported subsidence exclusion.

28. On the day that the $9,000,000 settlement demand was set to expire, Lexington, through its attorneys, advised CFC and VRC that it would not accept the $9,000,000 demand and that Lexington was only willing to contribute $1,000,000 towards a settlement of the Underlying Lawsuit.

29. Thereafter, Blue Sky Association countered with a demand in the amount of $8,975,000 to settle all of its claims against VRC and CFC in the Underlying Lawsuit.

30. After being advised of Blue Sky Association's revised demand, Lexington reiterated that it would was only willing to contribute $1,000,000 towards a settlement of the Underlying Lawsuit.

31. On Friday, February 8, 2013, with a jury trial scheduled to commence on Monday, February 11, 2013, and with CFC and VRC facing imminent, severe prejudice due to the material breaches of obligations by Lexington, and in order to protect themselves from further adverse consequences, CFC and VRC agreed with Blue Sky Association to a resolution of the Underlying Lawsuit in order to protect themselves from further harm and damages caused by Lexington.

32. Under the terms of their settlement, the parties agreed that judgment would enter in the Underlying Lawsuit in favor of Blue Sky Association against CFC and VRC in the amounts of $18,263,199.35 and $23,684,265.80, respectively.

33. Under the terms of the agreement, CFC and VRC each assigned to Blue Sky Association their rights, title, and interest in their claims against Lexington for collection of the judgment entered against them in the Underlying Lawsuit, including their rights to prosecute those claims in a civil action and to keep the proceeds from those claims.

34. On Friday, February 8, 2013, at 11:59 a.m., one minute before Blue Sky Association's offer of $8,975,000 was set to expire, and the last business day before trial, Lexington advised for the first time that it was now willing to contribute $3,000,000 towards a settlement of the Underlying Lawsuit.

35. At nearly the same time that Lexington made the counter offer to Blue sky Association in the amount of $3,000,000, Lexington also filed a declaratory judgment action in the U.S. District Court for the District of Colorado against VRC, CFC, and Blue Sky Association

styled *Lexington Insurance Company v. VRC Development LLC, et al.,* Civil Action No. 13-cv-00347-RBJ (the "Declaratory Judgment Action").

36. Although it commenced the Declaratory Judgment Action by filing a complaint, Lexington never served any of the defendants with the complaint.

37. On May 10, 2013, Lexington filed a Notice of Voluntary Dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), pursuant to which Lexington dismissed the Declaratory Judgment Action.

38. On May 14, 2013, more than three months after filing the Declaratory Judgment Action, counsel for Lexington advised counsel for Blue Sky Association for the first time that Lexington was demanding arbitration pursuant an arbitration provision in the Policy.

39. The arbitration provision in the Policy provides in pertinent part as follows:

> Notwithstanding Condition 15, Service of Suit, above, in the event of a disagreement as to the interpretation of this policy, it is mutually agreed that such dispute shall be submitted to binding arbitration before a panel of three (3) Arbitrators consisting of two (2) party-nominated (non-impartial) Arbitrators and a third (impartial) Arbitrator (hereinafter "Umpire") as the sole and exclusive remedy.

40. Blue Sky Association is not an insured under the Policy.

41. All conditions precedent to coverage have been waived and/or excused by Lexington's conduct.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (Breach of Contract)

42. Blue Sky Association incorporates by reference each and every allegation of its Complaint as if fully set forth herein.

43. The Policy constitutes a contract of insurance.

44. By its actions, as described above, Lexington breached the contract of insurance.

45. As a direct and proximate result of Lexington's breach of its contractual duties, Blue Sky Association is entitled to damages in an amount to be proved at trial.

## SECOND CLAIM FOR RELIEF)
### (Bad Faith Breach of Insurance Contract)

46. Blue Sky Association incorporates by reference each and every allegation of its Complaint as if fully set forth herein.

47. Lexington, at all material times, owed duties pursuant to the Policy's implied covenant of good faith and fair dealing, in accordance with which Lexington covenanted that it would, in good faith, and in the exercise of fair dealing, deal with its insureds fairly and honestly, faithfully perform its duties of representation, and do nothing to impair, interfere with, hinder or potentially injure the right of its insureds to receive the benefits of the Policy.

48. Lexington's conduct fell below the applicable statutory and common law standards of care when handling claims of third parties against an insured, violates its duties of good faith and fair dealing, and constitutes the tort of bad faith breach of insurance contract.

49. Lexington's actions were unreasonable and were committed in disregard of VRC and CFC's reasonable expectations as insureds.

50. Lexington's acts in breach of its duties of good faith and fair dealing include, without limitation:

    a. Failing to conduct a reasonable and objective investigation concerning coverage for the claims in the Underlying Lawsuit;

    b. Unreasonably refusing to settle the claims against VRC and CFC in the Underlying Lawsuit, without any reasonable basis for doing so;

    c. Failing to effectuate a prompt, fair and equitable settlement of the claims against VRC and CFC when liability was reasonably clear;

    d. Failing to provide reasonable explanation for the coverage position that it took in the Underlying Lawsuit;

    e. Depriving its insureds of the benefits and protections of the contract of insurance;

    f. Preferring its interests above those of its insureds; and

    g. Other conduct to be revealed during discovery

51. By its actions described above, Lexington breached its duty of good faith and fair dealing owed to its insureds.

52. As a direct and proximate result of Lexington's bad faith breach of the insurance contract, Blue Sky Association is entitled to damages in an amount to be proved at trial.

### **THIRD CLAIM FOR RELIEF**)
### (Declaratory Judgment)

53. Blue Sky Association realleges each and every allegation of its Complaint as if fully set forth herein.

54. There presently exists an actual controversy between Blue Sky Association and Lexington concerning the Policy.

55. As described above, although Lexington filed the Declaratory Judgment Action, it did not proceed with that lawsuit but instead, waited more than three months before dismissing the matter and advising Blue Sky Association that it was demanding arbitration under the Policy.

56. Blue Sky Association requests a judicial declaration pursuant to the Colorado Declaratory Judgment Act, C.R.S. § 13-51-101 *et seq.*, setting forth the rights and obligations of Lexington and Blue Sky Association with respect to Lexington's demand for arbitration under the Policy. Specifically, and without limitation, Blue Sky Association seeks a declaration that:

    (a) Blue Sky Association is not subject to the arbitration provision in the Policy;

    (b) The dispute between Lexington and Blue Sky Association does not involve a disagreement as to the interpretation of the Policy; and,

    (c) Lexington is estopped from demanding arbitration;

57. Such a declaration is necessary and appropriate to determine the rights and duties of Lexington and Blue Sky Association with respect to Lexington's arbitration demand.

58. Plaintiffs have no plain, speedy, or accurate remedy at law.

**WHEREFORE**, Plaintiff, Blue Sky Condominiums Homeowners' Association, Inc. respectfully requests that judgment be entered in its favor and against Defendant, Lexington Insurance Company, as follows:

    a. For compensatory damages in amounts to be proved at trial;

    b. For a declaration that Blue Sky Association is not subject to the arbitration provision in the Policy;

    c. For a declaration that the dispute between Blue Sky Association and Lexington does not involve a disagreement as to the interpretation of the Policy;

    d. For a declaration that Lexington is estopped from demanding arbitration;

    e. For all interest, statutory or moratory, allowed by law;

    f. For reasonable attorneys' fees and costs of suit herein; and

    g.    For such other and further relief as this Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

DATED this 12th day of June, 2013.

                                  **ROBERTS LEVIN ROSENBERG PC**

                                  */s/ Jeremy A. Sitcoff*
                                  Bradley A. Levin
                                  Jeremy A. Sitcoff
                                  **ATTORNEYS FOR PLAINTIFF**

<u>Address of Plaintiff:</u>
Blue Sky Condominum Homeowners' Association, Inc.
c/o Len Kaiser Hammersmith Management, Inc.
5619 DTC Blvd.
Greenwood Village, CO 80111